NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| AFRAH NYATOME, | : | |
| Plaintiff, | : | **Hon. Dennis M. Cavanaugh** |
| v. | : | **OPINION** |
| THE COUNTY OF HUDSON, HUDSON COUNTY DEPARTMENT OF CORRECTIONS, CAPTAIN JOSE MONTANEZ, LIEUTENANT NELSON RODRIGUEZ, | : | Civil Action No. 09-cv-1811 (DMC)(MF) |
| Defendants. | : | |

**DENNIS M. CAVANAUGH, U.S.D.J.:**

This matter comes before the Court upon four motions for summary judgment filed pursuant to Federal Rule of Civil Procedure 56. On January 14, 2011, Defendants Captain Jose Montanez (hereafter "Capt. Montanez") and Lieutenant Nelson Rodriguez ("Lt. Rodriguez") filed individual motions for summary judgment (respectively "Montanez Motion" and "Rodriguez Motion"). Counsel for the County of Hudson ("County") filed a motion for summary judgment on behalf of all Defendants on the same day ("County Motion"). Finally, on April 18, 2011, Plaintiff submitted a cross-motion for summary judgment against all Defendants ("Plaintiff's Motion"). Pursuant to Fed. R. Civ. P. 78, no oral argument was heard. Defendants' motions are based on the same facts and discuss the same issues. This Court will consider Defendants' three motions for summary judgment jointly and will grant summary judgment in favor of

1

all Defendants. After considering all submissions and based upon the following reasons, it is the decision of this Court, for the reasons herein expressed, that the Montanez Motion is **granted**; the Rodriguez Motion is **granted**; the County Motion is **granted**; and, Plaintiff's Motion is **denied**.

**I.    BACKGROUND**

Plaintiff was hired by the Hudson County Corrections Department ("HCCD") on January 29, 2001. For the time period pertinent to this matter, Plaintiff was working as a Clerk in the Professional Visits Department. (Nyatome Dep., 22:11-18, May 7, 2010). During the same time period, Defendant Lieutenant Nelson Rodriguez was working as a Corrections Officer. (Pl.'s Am. Compl at 2:4). Whether excusably or not, Plaintiff was absent from or late to work at the HCCD on many occasions during the course of her over six years of employment. In 2005, three warning notices were issued to Plaintiff for lateness. (Montanez Mot., Exs. H-J, January 14, 2011, ECF No. 25). Additionally, Plaintiff served a one day suspension for three additional and subsequent late arrivals. (Montanez Mot., Ex. J). In 2006, personnel, on the basis of sick leave and absenteeism in 2005, began requiring that Plaintiff supply doctor's notes documenting any absences or sick days beyond ten days per year. (Montanez Mot., Ex. K). Plaintiff was also suspended for three days in September of that year.[1] (Montanez Mot., Ex. L).

At the end of 2006, the incident upon which Plaintiff bases her claim occurred. On Friday, December 15, 2006, the date in question, Plaintiff and Lt. Rodriguez met on or around 4:30 PM. Plaintiff was leaving work. Plaintiff had suggested that Lt. Rodriguez join her at a PBA Christmas party later that evening. They had also discussed meeting at 4:30 PM when Plaintiff was to leave work and both parties recounted the conversation as involving some flirtation. The parties did meet at 4:30 PM in the lobby

---

[1] Plaintiff's sister passed away and she presented documentation requesting death in the family leave. Personnel did not find her documentation to be in compliance with County policy and instituted the suspension. (Nyatome Dep., 207:6-25; Montanez Mot., Exs. L-M).

2

and then, looking for more privacy, each entered their own vehicle. The parties drove to a parking lot, in the vicinity of the jail warehouse. Plaintiff entered Lt. Rodriguez's car. The parties spent up to twenty minutes in the vehicle talking and kissing.[2]

As far as what happened next, the parties are in dispute. Plaintiff alleges that Lt. Rodriguez grabbed her breast, unzipped his pants, exposed his penis and forced her head towards his genital area. (Nyatome Dep. 82:4-18, May 7, 2010). Lt. Rodriguez, on the other hand denies anything beyond consensual kissing. (Rodriguez Dep. 77:5-16, March 30, 2010; see also, Def.'s Res. to Pl.'s Statement of Mat. Facts ¶ 223). The parties further dispute the nature of their interactions before and after the incident in question. Lt. Rodriguez described a few instances before the incident where the parties "flirted" and Plaintiff even offered to bring him lunch. Id. at 80:18-81:15. Plaintiff, on the other hand, described interactions preceding the incident as involving merely "hi" and "bye." (Nyatome Dep. 71:9-19). She later recounted, however, that she had invited Lt. Rodriguez to a PBA Christmas party held annually by Derrick James, a Corrections Officer, and attended by the parties' colleagues. Id. at 74:11-18.

After the incident, Plaintiff states that she ran out of the car crying, called her cousin to describe what had happened and picked up her daughter from school. Id. at 83:15; 84:18-9. Later that Friday evening she attended the PBA Christmas party. Id. at 84:14-5. Lt. Rodriguez did not attend. (Rodriguez Dep., 61:7-19). On Monday, December 18th, upon returning to work, Plaintiff told two colleagues about the incident, Corrections Officers Derrick James and Jovonda Jackson. Plaintiff specifically told Officer James that she was looking for an apology from Lt. Rodriguez. Id. at 87:15-7. Officer James explained that he would have to report the incident. Id. at 90:20-3. Upon seeing Plaintiff crying as a result of the

---

[2]The facts contained in this paragraph are undisputed.

conversation, Jovanda Jackson, another Corrections Officer working nearby, further explained the reasons why the incident would have to be reported. Id. at 91:5-13.

Plaintiff called out sick on December 21st and 22nd and was then granted medical leave for four months ending on April 2, 2007. (Rodriguez Mot., Ex. K). On April 25, 2007, Plaintiff received a "Step 5" disciplinary action and was suspended for five days.[3] (Montanez Mot., Ex. S). Just over a month later, Plaintiff requested and was granted a second medical leave on or about June 6, 2007 through July 25, 2007.[4] (Montanez Mot., Ex. T). Plaintiff did not return to work until August 6, 2007 when she presented Capt. Montanez with a doctor's note stating that she had seen the doctor on August 3rd. (Montanez Mot., Ex. W). Plaintiff was advised by Capt. Montanez that the note was unacceptable. Plaintiff did not return to work after August 6, 2007. (Montanez Mot., Ex. U).

On August 15, 2007 a disciplinary action was filed against Plaintiff for insubordination, conduct unbecoming a public employee, neglect of duty, resignation not in good standing and abandonment of job.[5] (Montanez Mot. Summ. J. 6, Ex. U, ECF No. 25). On August 22, 2007, Plaintiff's employment was effectively terminated with charges of resignation not in good standing. Id.

The Employee Handbook for Hudson County (the "Handbook") details each of the policies

---

[3] A "Step 5" disciplinary action was instituted upon reporting to work late after: 1) one verbal warning, 2) one written warning, 3) a one day suspension; and, 4) a three day suspension. The fifth incident involved Plaintiff's report that her lateness was the result of a car accident which, upon research, was found to be impossible.

[4] Defendant Montanez disputes whether this medical leave had actually been granted.

[5] All of which are deemed "causes for discipline, including discharge" in the Handbook. (Montanez Mot. Summ. J., Ex. G, at 16).

4

regarding leave, lateness, sick days and excessive absences.[6] Each employee was entitled to fifteen sick days. (Montanez Mot. Summ. J. 3). Further, the Handbook detailed policies pursuant to a "progressive discipline" system for dealing with excessive lateness. (Montanez. Mot. Summ. J. Ex. G, at 18). Taking a sick day requires timely notification prior to the day and permission, without which the employee could be subject to discipline. Id. Pursuant to policy, with each additional infraction, Plaintiff was given a verbal warning, then a written warning, and then a suspension was imposed within the given range of one to thirty days.

**II.   STANDARD OF REVIEW**

It is well established that this Court is to review the facts in the light most favorable to the Plaintiff. Marzano v. Computer Sci. Corp. Inc., 91 F.3d 497, 501 (3d Cir.1996); see also, Dowling v. Citizens Bank, 295 Fed.Appx. 499 (3d Cir. 2008). Summary judgment is appropriate where there are no genuine and material issues of fact. Celotex Corp. v. Catrett, 477 U.S. 317, 330 (2008). A factual dispute is material if, under the substantive law, it would affect the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The non-moving party "may not rest upon the mere allegations or denials of his pleading" to satisfy this burden, but must produce sufficient evidence to support a jury verdict in his favor. Fed. R. Civ. P. 56(e); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

The Third Circuit holds that "in considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence is to be believed and all justifiable inferences are to be drawn in his favor." Marino v.

---

[6]Ms. Nyatome received an updated Employee Handbook on or about May 1, 2003. (Nyatome Dep. 18:8-19:7).

Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255). In a sex discrimination action, a genuine issue of material fact regarding whether the alleged conduct was pervasive or severe enough to be actionable will preclude summary judgment. Domm v. Jersey Printing Co., Inc., 871 F.Supp. 732, 739; see also Civil Rights Act of 1964, § 703(a)(1), 42 U.S.C. § 2000e-2(a)(1) (1991).

**III.   DISCUSSION**

For summary judgment purposes, the first inquiry is what facts are disputed; the Court then must ask whether those facts are material, as a matter of law, to the elements required to prove Plaintiff's case. Plaintiff has not proven that the Defendants' conduct rises to the level of sexual harassment or creates a hostile work environment at law. More importantly, at this stage, Plaintiff has not persuaded this Court that the disputed issues of fact are material to the case.

**A.   Sexual Harassment Claim: Hostile Work Environment**

A hostile work environment claim falls under the umbrella of sexual harassment for Title VII purposes. An employer will be liable under Title VII for hostile work environment sexual harassment when an employee proves that: (1) she suffered intentional discrimination because of her sex, (2) the discrimination was pervasive and regular, (3) the discrimination detrimentally affected her, (4) the discrimination would have detrimentally affected a reasonable person of the same sex, in like position, and (5) forms a basis for respondeat superior liability. Pagan v. Holder, 741 F.Supp.2d 687, 697 (D.N.J. 2010); see also, Civil Rights Act of 1964, § 42 U.S.C. 2000(e)-2(a)(1) (1991). The Supreme Court has made it clear that "not all workplace conduct that may be described as 'harassment'" is actionable under Title VII. Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57 (1986). Sexual harassment is only actionable if the discriminatory conduct is "sufficiently severe or

pervasive to alter the conditions of the [victim's] employment and create an abusive working environment." Id. In Lehman, the New Jersey Supreme Court stated that only in rare and extreme cases will "a single incident be so severe that it would, from the perspective of a reasonable woman, make the working environment hostile." Lehman v. Toys R Us, 132 N.J. 587 (1993).

Here, assuming *arguendo* that the facts are as the Plaintiff has stated them, Plaintiff's case does not meet the requirements for a hostile work environment cause of action under Title VII. Hostile work environment claims are directly linked to discrimination - not present here - and the *environment* of the workplace. Plaintiff did not suffer discrimination based on her sex. The facts presented do not meet the requisite "pervasive and regular" element creating an abusive working environment. The incident that took place on December 15th was isolated and occurred once Plaintiff was off-duty and off-premises. Plaintiff admits she consented and in fact orchestrated the meeting. Plaintiff concedes that she intended and desired to spend time with Lt. Rodriguez as is further evinced by her invitation that he join her at the PBA Christmas party and to meet her in the lobby after work. The factual dispute involving what happened in Lt. Rodriguez's car that evening is not material to this cause of action and will not defeat Defendants' motions for summary judgment.

The Plaintiff, having withdrawn several allegations from the First Amended Complaint ("Complaint"), fails to prove Counts Four and Eight alleging discrimination, excessive discipline and violations of her civil rights under Federal Law.[7]

**B.** **Disciplinary measures taken by the HCCD**

Plaintiff fails to prove Counts Three and Twelve of her Complaint that Defendants created a

---

[7]The Court refers to Plaintiff's First Amended Complaint removed from New Jersey Superior Court on April 16, 2009. (ECF No. 1-3).

hostile work environment due to excessive discipline and wrongful termination of her employment. Plaintiff similarly alleges that Capt. Jose Montanez, the County of Hudson and the HCCD are liable for creating a hostile work environment "*before and/or after* the December 15th, 2008 [sic] incident." (emphasis added) (Pl.'s Am. Compl., Count 3:¶2).  As plead, Plaintiff's Amended Complaint fails to persuade this Court that disciplinary action instituted against Plaintiff was unreasonable or that it was instituted for any other reason beyond her failure to comply with policy.  Further, the relevant facts are not in dispute.  Defendants admit that Plaintiff's doctor's notes were rejected and that she was suspended for lateness.  (Pl.'s Mem. Supp. Cross-Mot. Summ. J. 18).  Plaintiff's personnel file, without further explanation, reveals her noncompliance with policy.  It is clear from the record that Plaintiff had ample notice of the policies of her place of employment and was given written and verbal warnings before disciplinary action progressed to suspension.  Moreover, Plaintiff in fact attributes no discriminatory motive, as far as membership in a protected class, to Capt. Montanez's treatment.  (Nyatome Dep. 67:14-18, May 7, 2010) (declining attribution of any kind of motive such as "race, sex, age, sexual orientation or disability").  This Court finds no basis upon which to find that the County or HCCD acted in a discriminatory manner based on anything other than Plaintiff's noncompliance.

Plaintiff alleges violation of the New Jersey Law Against Discrimination ("NJLAD").  The NJLAD also prohibits an employer from taking retaliatory action against an employee for disclosing or testifying about information regarding a policy or activity or refusing to participate in an activity the employee reasonably believes is violating public policy or law. Conscientious Employee Protection Act ("CEPA"), N.J.S.A. 34:19-3 (2006).  Plaintiff seems to be arguing that the disciplinary actions enforced by the HCCD were a retaliatory response to her reporting the incident to Mr. James

and Ms. Jackson. The evidence provided by Plaintiff does not coincide with this cause of action rather, the disciplinary action Plaintiff complains of was evenly applied before and after she reported the December 15th incident to supervisors. Additionally, the County and HCCD took reasonable remedial measures to ensure that Lt. Rodriguez was subjected to disciplinary action upon notice of the December 15th incident. Plaintiff herself acknowledges that Lieutenant Rodriguez was demoted to Sergeant and that he was suspended. (Nyatome Dep. 115:4-16). In the sexual harassment context, the Third Circuit has held that a remedial action that stops the harassment is adequate as a matter of law. Knabe v. Boury Corp., 114 F.3d 407, 411 n.8 (3d Cir. 1997); see also Bouton v. BMW of North America, Inc., 29 F.3d 103, 106 (3d Cir. 1994); Jensen v. Potter, 435 F.3d 444, 453 (3d Cir. 2006); and Andreoli v. Gates, 482 F.3d 641, 644 (3d Cir. 2007). No further incidents were reported after December 15th.[8]

### C. Intentional and Negligent Infliction of Emotional Distress Claims

Plaintiff fails to show that a genuine issue of material fact exists with regard to Counts Nine and Ten; that Defendants intentionally inflicted or negligently caused her emotional distress at law. Intentional and negligent infliction of emotional distress claims each require extreme and outrageous conduct and damages. 82 Am. Jur. 2d Wrongful Discharge § 152 (2011). Damages must rise to the level of distress. Carey v. Piphus, 435 U.S. 247 (1978). Although essentially subjective, genuine injury in this respect may be evidenced by one's conduct and observed by others. Carey, 435 U.S. at 264 n. 20. Plaintiff claims she suffered from stress, anxiety, weight loss and stomach upset after the incident. Plaintiff has not offered sufficient proof that her emotional distress is so severe that no

---

[8]The only contact Plaintiff recollected since the incident was based on merely an assumption that calls from an "unavailable" number to her cell phone within a week of the incident came from Lieutenant Rodriguez. (Nyatome Dep. 99:19-20, May 7, 2010).

reasonable person could be expected to endure it. Buckley v. Trenton Sav. Fund Soc'y, 111 N.J. 355, 366 (1988).  Moreover, the County and HCCD specifically, had a legal right to terminate her based on her insubordinate acts and excessive absences and lateness.  Plaintiff's course of conduct predated the December 15th incident.  Regarding the incident, even if the truth of the facts as Plaintiff alleges them to be are assumed *arguendo*, Plaintiff has similarly failed to show that Lt. Rodriguez either negligently or intentionally caused her distress.  Plaintiff concedes that she conducted her business regularly immediately following the incident that evening and even enjoyed time spent at the PBA Christmas party.  (Nyatome Dep. 85:8-10 ; James Dep. 41:16-42:10).

      D.      **Punitive Damages**

Plaintiff fails to provide basis for awarding punitive damages, pursuant to Count Seven, against the County and further fails to persuade this Court that co-Defendants are individually liable for aiding and abetting.  Plaintiff fails to make a prima facie case for sexual harassment and hostile work environment before instructing the court that punitive damages are available in the instant case.  Punitive damages are available to victims of workplace discrimination when they can prove: 1) actual participation in or willful indifference to the wrongful conduct on the part of upper management; and, 2) proof that the offending conduct is especially egregious.  Lehman v. Toys R Us, Inc., 132 N.J. 587, 624-5  (1993).  This Court has already reasoned and concluded on the point of workplace discrimination finding in favor of the Defendants.  Punitive damages are not available in this case.

**IV.**     **CONCLUSION**

Even assuming *arguendo* the facts as Plaintiff states them, she has not offered sufficient proof to show that the disputed issues are material to the elements required to prove any counts of liability contained in her Amended Complaint.  For the reasons stated, Plaintiff's motion for summary

judgment is **denied**, the Montanez Motion is **granted**; the Rodriguez Motion is **granted**; the County Motion is **granted**.  An appropriate Order accompanies this Opinion.

S/ Dennis M. Cavanaugh  
Dennis M. Cavanaugh, U.S.D.J.

Date:        September  29 , 2011  
Original:    Clerk  
cc:          All Counsel of Record  
             Hon. Mark Falk, U.S.M.J.  
             File